## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RODOLFO M.,

                Plaintiff,

     v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

             Defendant.

Case No. 21 C 5565

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Rodolfo M. seeks review of the final decision of the Acting Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Rodolfo requests reversal of the ALJ's decision and remand, and the Acting Commissioner moves for summary judgment affirming the decision. For the following reasons, the Court affirms the ALJ's decision.

## BACKGROUND

Born on September 7, 1963, Rodolfo was 56 years old when he applied for DIB and SSI on September 20, 2019. Rodolfo alleges disability as of July 19, 2019 due to gout and knee and back problems. Rodolfo obtained a GED and last worked in July 2019 as a delivery driver for a pizza restaurant.

On February 11, 2021, the administrative law judge ("ALJ") issued a decision denying Rodolfo's applications. (R. 15-24). The ALJ concluded that Rodolfo's gout was a severe impairment but did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 18-19. The ALJ specifically considered Listing 14.09 for inflammatory arthritis. *Id.* at 19. The ALJ found Rodolfo's mental impairments of mood disorder and

posttraumatic stress disorder to be non-severe impairments. *Id*. at 18. Under the "paragraph B" analysis, the ALJ found that Rodolfo had no more than a mild limitation in the four functional areas of understanding, remembering or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. *Id*. The ALJ then determined that Rodolfo had the residual functional capacity ("RFC") to perform medium work except that he had the following additional limitations: frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch or crawl; and occasional exposure to heat, vibration and hazards. *Id*. at 19. Based on the vocational expert's testimony, the ALJ found that Rodolfo is able to perform his past relevant work as a route driver. *Id*. at 22. Alternatively, the ALJ found that Rodolfo was not disabled because he can perform jobs existing in significant numbers in the national economy, including cleaner, kitchen helper, and packer. *Id*. at 22-23.

## DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Clifford v. Apfel*, 227 F.3d 863,

868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ----, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Rodolfo raises only one alleged error in the ALJ's decision—namely, that the ALJ improperly rejected the opinions of his treating physician Maria Castellon, M.D., when formulating his RFC.[1] Rodolfo generally argues that the ALJ failed to provide a legally sufficient explanation to discount Dr. Castellon's opinions. The Court disagrees and concludes that the ALJ

---

[1] Rodolfo does not challenge the ALJ's handling of the other opinion evidence. The ALJ also considered the opinions of Dr. Rochelle Hawkins (consulting examining physician), Dr. Ana A. Gil (consulting examining psychiatrist), and the state agency medical and psychological consultants (Drs. Karen Hoelzer, Rohini Mendonca, Ellen Rozenfeld, and Nichole Robicheau).

offered an adequate explanation supported by more than a scintilla of evidence for finding that certain opinions provided by Dr. Castellon were not persuasive.

The ALJ's evaluation of the medical opinion evidence in Rodolfo's case was subject to new regulations pertaining to claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c (2017). Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ need only articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors, including supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ must explain how she considered the factors of supportability and consistency in her decision, but she is not required to explain how she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

On September 15, 2020, Dr. Castellon completed a Treating Source Statement – Physical Conditions form. (R. 406-09). On this form, Dr. Castellon noted that she had been treating Rodolfo every two weeks for one month. *Id*. at 406. She listed Rodolfo's diagnoses as gout, acute exacerbation of chronic back pain, renal insufficiency, and prediabetes. *Id*. Dr. Castellon checked boxes indicating that Rodolfo could maintain concentration for less than two hours before needing a break, would likely be off task greater than 25% of the workday due to his symptoms such as

pain or medication side effects, would likely be absent from work more than four days per month due to his impairments, could occasionally lift 10 pounds and rarely lift 20 pounds, could occasionally carry 50 pounds and rarely carry 20 pounds, could sit for six hours in a workday, could stand/walk for five hours in a workday, and would require the option to sit/stand-at will and sometimes lie down or recline throughout the workday. *Id.* at 406-07. In response to a question asking Dr. Castellon to identify the particular medical or clinical findings that support her assessed lifting and carrying limitations, she wrote: "Patient has tenderness on palpation on paraspinal thoracic vert[ebrae], limited range of motion of back and shoulders bilaterally." *Id.* at 407. Dr. Castellon provided the following medical or clinical findings to support her opined sitting, standing, and walking restrictions: "Patient uncomfortable when standing/sitting for long periods of time [without] changing position." *Id.*

In addition, Dr. Castellon checked boxes indicating that Rodolfo could rarely reach overhead, but occasionally reach in all other directions and push and pull, and that he could frequently handle, finger, feel, and operate foot controls bilaterally. (R. 408). Moreover, Dr. Castellon indicated that Rodolfo could rarely climb ladders and scaffolds, stoop, crouch, and operate moving mechanical parts; occasionally climb stairs and ramps, kneel, and crawl; and frequently balance, rotate head and neck, work at unprotected heights, operate a vehicle, tolerate exposure to humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme temperatures, and vibrations. *Id.* at 409. When asked to describe the medical or clinical findings that support her postural limitations, Dr. Castellon explained that "Patient's back ROM is limited." *Id.*

Two weeks later, on September 29, 2020, Dr. Castellon completed a Treating Source Statement – Psychological Conditions form. (R. 418-22). In this statement, Dr. Castellon noted she had treated Rodolfo for a month for back pain, osteoporosis, gout, fatigue, possible PTSD,

depression and memory impairment. *Id*. at 418. She opined that Rodolfo's prognosis was good and that his psychological symptoms and limitations would not be expected to last for at least 12 months. *Id*. Dr. Castellon noted that Rodolfo suffered from the following symptoms of depressive syndrome: anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, difficulty concentrating or thinking, and recurrent or intrusive recollections of a traumatic experience, which are a source of marked distress. *Id*.

Dr. Castellon opined that Rodolfo was mildly limited in his ability to: understand, remember, or apply information; and concentrate, persist, or maintain pace. (R. 420). She also reported that Rodolfo was moderately limited in his ability to interact with others and not limited in his ability to adapt and manage himself. *Id*. Dr. Castello opined that Rodolfo would be mildly limited in his short-term memory, moderately limited in understanding and carrying out very short and simple instructions, and mildly limited in understanding and carrying out detailed but uninvolved written or oral instructions. *Id*. at 421. Rodolfo could maintain attention and concentration for less than one hour before requiring a break. *Id*. According to Dr. Castellon, Rodolfo can sometimes work appropriately with the general public and co-workers and sometimes respond appropriately to changes in work settings. *Id*. at 421-22. Dr. Castellon opined that he would be off-task 15% of the workday and absent more than four days per month. *Id*. at 422.

In assessing Rodolfo's RFC, the ALJ determined that Dr. Castellon's opinions were not persuasive for three reasons. (R. 22-23). First, the ALJ found that Dr. Castellon's opinions "are not consistent with the overall conservative treatment of record, including the lack of formal psychiatric treatment and the medical management of physical impairments." *Id*. at 21-22. Second, according to the ALJ, "the opinions are not well supported by Dr. Castellon, as she relies at least in part on the claimant's subjective complaints when formulating her opinion." *Id*. at 22. Third,

the ALJ pointed out that "the opinions were rendered after only treating the claimant for approximately one month and two visits" and the "claimant testified that his visits with her were short, about 15 minutes." *Id*. The Court finds that the ALJ's first and third reasons constitute valid bases supported by substantial evidence for discounting opinions of Dr. Castellon. The second ground for the ALJ's decision to discount Dr. Castellon's opinions, while arguably improper, was (as discussed below) harmless.

The ALJ's first reason for discounting Dr. Castellon's opinions was that her findings were not consistent with the record as a whole showing conservative treatment for Rodolfo's physical and mental impairments. "Medical opinions may be discounted if they are inconsistent with the record as a whole." *Chambers v. Saul*, 861 F. App'x 95, 101 (7th Cir. 2021); 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.").

Specifically, the ALJ found Dr. Castellon's opinion that Rodolfo would be absent four or more days per month, he would be able to maintain attention for less than two hours at a time, he could rarely lift/carry even 20 pounds and occasionally only 10 pounds, he could stand/walk five of eight hours in a workday with the need for a sit/stand option, and he could rarely lift overhead and only occasionally reach in other directions inconsistent with Rodolfo's overall conservative course of treatment. (R. 21). In characterizing his treatment as conservative, the ALJ noted Rodolfo's treatment with only medication management for his gout and knee and back pain, limited diagnostic and clinical findings, and physical therapy referral. *Id*. Rodolfo does not take issue with the ALJ's characterization of his treatment as "conservative" during the relevant period or argue the ALJ improperly considered his conservative treatment history. Similar or more

invasive treatment plans involving injections have been considered conservative in other cases. *See Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) ("Prill's treatment—injections, orthotics, and physical therapy—was conservative."); *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (characterizing prescription pain medication, physical therapy, and epidural steroid injections for back pain as conservative treatment) *Burnam v. Colvin*, 525 F. App'x 461, 464-65 (7th Cir. 2013) (conservative treatment for disc pain included physical therapy, Tylenol, and epidural injections). *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (noting claimant's "relatively conservative" treatment consisting of "various pain medications, several injections, and one physical therapy session"); *Caldarulo v. Bowen*, 857 F.2d 410, 413-14 (7th Cir. 1988) (painkillers, rest, and therapy are considered conservative treatment).

The ALJ's characterization of Rodolfo's treatment as conservative is amply supported by the record. During the relevant period, Rodolfo's gout treatment plan involved primarily medication (allopurinol, indomethacin, and colchicine) and diet changes (such as decreased alcohol and meat intake). (R. 313, 316, 317). For example, the ALJ observed that at Rodolfo's annual exam on December 20, 2019 with Nurse Practitioner Hannah Holmes, he reported experiencing a gout flare "about every month or so" but only taking medication as needed when pain seemed to be starting. *Id*. at 305. Although Rodolfo reported generalized body pain and muscle pain, he had normal musculoskeletal range of motion on physical examination. *Id*. at 305. NP Holmes recommended Rodolfo consider taking allopurinol daily given the frequency of his reported flares. *Id*. at 307, 317. At his follow-up appointment a month later, Rodolfo reported that allopurinol did not help with his gout and that he previously used colchicine which helped more. *Id*. at 313. He exhibited normal range of motion on musculoskeletal examination and minimal tenderness to his upper shoulders. *Id*. at 314. NP Holmes recommended allopurinol, indomethacin,

and colchicine for Rodolfo's gout. *Id*. at 316. For pain, NP Holmes recommended Flexeril and ibuprofen and upper back rehabilitation exercises with consideration of physical therapy in the future if no improvement. *Id*. at 317. Rodolfo was advised to return in three month or sooner if new or different symptoms presented. *Id*.

Rodolfo was next seen almost seven months later on August 18, 2020 at Erie Humboldt Park Health Center, reporting a gout attack involving his knees and big toes four days earlier. (R. 445). The ALJ noted that Rodolfo had been drinking alcohol and felt this triggered the attack. *Id*. at 21, 445. Rodolfo took some indomethacin at home which helped with the pain. *Id*. At the appointment, Rodolfo reported that his pain had improved. *Id*. On exam, Ahmad A. Abdl-Haleem, D.O., noted Rodolfo's left medial knee had tenderness to palpation with mild effusion, no erythema, and normal skin temperature. *Id*. at 446. Dr. Abdl-Haleem refilled Rodolfo's allopurinol and colchicine prescriptions, discussed diet to prevent gout flare-ups, and instructed Rodolfo to get his serum uric acid levels drawn to assess if his allopurinol needed to be adjusted up from 100 mg. *Id*. On September 1, 2020, Rodolfo follow-up with Dr. Castellon at Erie Humboldt Park Health Center and stated that he felt much better after his latest gout flare. *Id*. at 439. He had only mild swelling and tenderness of his medial left knee, but said it was "almost gone now." *Id*. Rodolfo reported that he had stopped allopurinol prior to his last gout episode but had been adhering to the medication regime since. *Id*. Dr. Castellon did not increase Rodolfo's gout medications. *Id*. at 442.

As for Rodolfo's back pain, the treatment regime also involved conservative management, including pain medication and a physical therapy referral in September 2020. On September 1, 2020, Rodolfo presented with upper back pain for months and reported taking ibuprofen with mild symptomatic relief. (R. 439). Dr. Castellon noted reduced range of motion in Rodolfo's upper

extremities and prescribed pain medication (gabapentin) daily at bedtime, rest, and cold and warm compresses. *Id*. at 442. Two weeks later, Rodolfo's back pain had improved, he had recovered some mobility in his upper extremities, and he had stopped taking ibuprofen. *Id*. at 434. Rodolfo reported taking gabapentin as prescribed and said it helped him with his pain as well as insomnia. *Id*. Dr. Castellon instructed Rodolfo to continue gabapentin and recommended physical therapy to work on his range of motion. *Id*. at 436. As the ALJ observed, the results of Rodolfo's September 23, 2020 spine x-ray showed some evidence of osteoporosis but no acute changes. *Id*. at 21, 430, 470. The ALJ recognized that at Rodolfo's next appointment with Dr. Castellon on September 29, 2020, he had improved range of motion despite complaints of some back pain. *Id*. at 21, 428. Dr. Castellon noted Rodolfo continued taking gabapentin but had not followed-up with the referral to physical therapy. *Id*. For back pain, she recommended Rodolfo continue gabapentin and schedule a physical therapy evaluation and therapy. *Id*. at 430. She further instructed Rodolfo to start calcium and vitamin D supplements for his osteoporosis and to return in one month. *Id*. at 430, 431. The record reflects no further appointments with Dr. Castellon or any other provider.

In addition to the above evidence showing conservative treatment, Dr. Castellon's opinions were inconsistent with the opinions of the non-examining state agency medical physicians. An ALJ may reasonably discount a treating physician opinion if it conflicts with a reviewing state agency consultant's opinion. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). The ALJ first considered the results of Rodolfo's physical consultative examination, which were considered by the state agency medical reviewers. (R.21). The ALJ noted that at his February 2020 physical consultative examination performed by Rochelle Hawkins, M.D., Rodolfo exhibited: full range-of-motion in all joints, full motor strength in the upper and lower extremities, full fist and grip strength, normal fine and gross manipulative ability, normal sensation, normal motion of the spine,

and normal gait without the use of an assistive device. *Id*. at 21, 351-52.  Dr. Hawkins opined that Rodolfo could sit, stand, lift, and carry without difficulty. *Id*. at 353.  She also opined that Rodolfo would have some difficulty with prolonged walking due to his chronic bilateral knee pain from gout. *Id*.

The ALJ credited Dr. Hawkins' opinions regarding Rodolfo's ability to sit, stand, lift and carry because they were supported by her examination findings, including 5/5 strength throughout, normal motion of the spine, and full range of motion in all joints. (R. 21).  Additionally, the ALJ found these findings by Dr. Hawkins to be consistent with Rodolfo's limited and conservative treatment record of medication management. *Id*.  On one point, the ALJ did not credit Dr. Hawkins' opinion.  The ALJ found that "the opined difficulty in prolonged walking is persuasive only to the extent it is consistent with the above-defined residual functional capacity for standing/walking six of eight hours." *Id*.  The ALJ found Dr. Hawkins' prolonged-walking concern inconsistent with Rodolfo's lack of an assistive device at the consultative examination and the objective findings of normal gait and the ability to walk greater than fifty feet unassisted. *Id*. at 21, 352.

The ALJ then considered the opinions of two reviewing state agency physicians. (R. 21).  On March 17, 2020, Karen Hoelzer, M.D., reviewed the medical record with respect to Rodolfo's physical impairments, including the consultative examination by Dr. Hawkins that found him to have some difficulty in prolonged walking, and opined that Rodolfo's physical RFC allowed him to occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk and/or sit up to six hours in an eight-hour workday, frequently climb ramp/stairs, balance, stoop, kneel, crouch, and crawl, and occasionally climb ladders/ropes/scaffolds. (R. 60-61, 70-71).  On reconsideration by Rohini Mendonca, M.D., on April 30, 2020, the previous physical RFC was upheld but additional environmental limitations, *i.e.,* avoid concentrated exposure to extreme cold, heat, and vibration,

were assessed. *Id.* at 82-85, 94-97. The ALJ found the state agency physical consultants' assessments generally persuasive as they were "supported by the overall conservative treatment of record, including only medication management" and "consistent with the limited objective findings of record, including those of the consultative examination." *Id.* at 21. However, the ALJ assessed additional exposure to hazards and climbing ladders, ropes and scaffolds limitations than those assessed in the reviewing state agency consultants' opinions considering Rodolfo's gout flares. *Id.*

According to Rodolfo, the ALJ failed to explain why a walking limitation of six hours out of an eight-hour workday was supported by substantial evidence in light of Dr. Castellon's opinion that Rodolfo is limited to standing/walking for five hours in an eight-hour workday and Dr. Hawkins finding that he would have "some difficulty in prolonged walking due to chronic bilateral knee pain from gout." (R. 353). The ALJ adequately explained why she discounted Dr. Castellon's five-hour stand/walk limitation with a sit/stand option. Instead, the ALJ credited the view of the state agency physicians who reviewed the record, including Dr. Hawkins' report, and opined that Rodolfo can stand and/or walk for six hours in an 8-hour workday. *Id.* at 21. In reaching that conclusion, the state agency physicians specifically relied on Dr. Hawkins' report showing: no anatomic abnormality of the cervical, thoracic or lumbar spine, no limitation of motion of any spinal segment, normal gait without limp or staggering, no use of an assisted device, capable of walking more than fifty feet without assistive device, no anatomic abnormality of either lower extremity, no evidence of redness, warmth, thickening or effusion of any joint, complaints of moderate knee pain but ankles, knees and hips all have full range of motion, straight leg raises are 90 degrees in sitting and supine positions, no cyanosis, clubbing, or edema, capillary refill is immediate, and muscle strength is 5/5 bilaterally. *Id.* at 61, 71, 85, 96. The ALJ reasonably

credited the state agency physicians' opinions as to Rodolfo's ability to stand and/or walk over Dr. Castellon's view that Rodolfo could stand/walk five hours in an 8-hour workday and needed a sit/stand option. Under the applicable regulations, the ALJ was permitted to credit the state agency physicians' opinion over Dr. Castellon's given her finding that former opinions were more consistent with the limited objective findings in the record, including those of the consultative examination by Dr. Hawkins, and supported by the overall conservative treatment record, including primarily medication management. *Id*. at 21; *Prill*, 23 F.4th at 751.

Turning to Rodolfo's mental impairments, the ALJ similarly concluded that Dr. Castellon's opinions were inconsistent with his conservative treatment for his mental impairments. In rejecting certain of Dr. Castellon's opinions as to Rodolfo's mental limitations, the ALJ found that Dr. Castellon's opinions were inconsistent with Rodolfo's lack of treatment from a mental health specialist. Although there was no treatment from a mental health specialist, the ALJ considered that "[t]he evidence showed only medication management by the claimant's primary care provider."[2] (R. 18). The ALJ's explanation reflects her consideration of the consistency factor. The ALJ properly considered that Rodolfo's lack of formal mental health treatment was

---

[2]    Rodolfo's mental health treatment history is limited. On December 20, 2019, Rodolfo's mood was anxious and depressed and NP Holmes recommended Zoloft 25 mg daily and a behavioral health clinic (BHC) consult which she wrote that she facilitated for December 23, 2019. (R. 382-83). There is no evidence of a BHC appointment in the record. On January 20, 2020, Rodolfo reported that he had not picked up his Zoloft prescription. *Id*. at 390. At the hearing, Rodolfo explained that he did not fill the prescription because could not afford the medication. *Id*. at 42. NP Holmes advised Rodolfo to take Zoloft and continue to pursue intensive therapy options. *Id*. at 395. She noted that Rodolfo was resistant to therapy at that time because he "feels better." *Id*. The record shows no evidence of therapy appointments. On September 15, 2020, Rodolfo complained of depression. *Id*. at 435. However, on examination, Dr. Castellon noted that Rodolfo exhibited: proper orientation, "no depression, anxiety, or agitation," and intact insight and judgment and she recommended no treatment for his depression complaint. *Id*. at 436. Two weeks later, Rodolfo reported decreased energy, some mild memory impairment, and difficulty concentrating, which began six months prior. *Id*. at 428, 430. Rodolfo also stated that he sometimes got startled with loud noises and flashbacks of an attack by gang members near his house a few years earlier. *Id*. Dr. Castellon noted that Rodolfo could be suffering from PTSD and she referred him to Behavioral Health for further assessment and management. *Id*. at 430-31. A mental exam that day was normal. *Id*. at 430. The record includes no later treatment records.

inconsistent with the moderate limitations in understanding and carrying out very short and simple instructions and in interacting with others opined by Dr. Castellon.

The ALJ also placed significance on the September 2020 findings of the psychological consultative examiner, Dr. Gil. (R. 18, 337-40). The ALJ pointed out that Rodolfo reported considerable activities of daily living to Dr. Gil, including being able to dress and care for his hygiene independently, use public transportation independently, drive short distances, spend time with friends, and pay bills. *Id*. at 18. In particular, the ALJ noted that on examination, Rodolfo was alert and fully oriented with logical thought process, exhibited the ability to perform simple mathematic calculations, and had only mild impairments in his immediate memory. *Id*. The ALJ emphasized that Dr. Gil assessed Rodolfo with adjustment disorder with depressed mood, only mild in severity. *Id*. at 18, 340. The ALJ adequately explained that these limited findings did not support finding that Rodolfo's mental impairments resulted in more than minimal functional limitations. *Id*. at 18.

Moreover, Dr. Castellon's opinions conflicted with the conclusions of the state agency reviewing psychologists, who considered Dr. Gil's consultative examination findings. *Ray v. Saul*, 861 F. App'x 102, 106 (7th Cir. 2021). While the ALJ found Dr. Castellon's opinions about Rodolfo's mental impairments were not consistent or supported by the record as a whole, she found that the state agency psychological reviewers' opinions were consistent and supported by the record. Specifically, the ALJ found that Drs. Rozenfeld's and Robicheau's opinions that Rodolfo's mental impairments were not severe and caused no more than mild limitations were consistent with the limited mental status examination findings of record, including those of the psychological consultative examination, and supported by the lack of formal psychiatric treatment which showed only medication management by Rodolfo's primary care provider. (R. 18). The ALJ was entitled

to rely on Drs. Rozenfeld's and Robicheau's opinions as reviewing state agency consultants, given that they are experts in Social Security disability evaluation and she determined that their opinions were consistent with the limited mental status examination findings in the record, including those of the psychological examination. *Prill*, 23 F.4th at 751.

The Court also notes that Rodolfo's overall conservative treatment record was not the only factor the ALJ considered in evaluating Dr. Castellon's opinions. For her third reason for finding Dr. Castellon's opinions to be unpersuasive, the ALJ noted that Dr. Castellon's examinations of Rodolfo were limited—both in frequency and the length of the examinations. As the ALJ noted, Dr. Castellon had treated Rodolfo only two times at the time of her physical RFC assessment on September 15, 2020. (R. 22, 406-09). Dr. Castellon saw Rodolfo three times—on September 1, 2020, September 15, 2020, and September 29, 2020—before issuing her psychological opinions. *Id*. at 427-43. The ALJ noted that Rodolfo testified that his visits with Dr. Castellon were brief, lasting about 15 minutes. *Id*. at 22, 42-43. The length of the treatment relationship, frequency of examinations, and extent of the treatment relationship is a relevant factor in determining the persuasiveness of an opinion because they "may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s)" and "the level of knowledge the medical source has of your impairments." 20 C.F.R. §§ 404.1520c(3)(i)-(iii), 416.920c(3)(i)-(iii). Thus, the ALJ reasonably discounted Dr. Castellon's opinions on the basis of her limited treatment history with Rodolfo.

Rodolfo contends that it inconsistent for the ALJ to credit the opinions of Drs. Rozenfeld and Robicheau who did not examine Rodolfo, but to discount the Dr. Castellon's opinions because they are based on a limited treatment relationship. Doc. 14 at 13. This argument is not persuasive. Under the new regulatory scheme for evaluating medical opinions, the opinions of treating

physicians are not entitled to any particular deference. *See* 20 C.F.R. §§ 404.1520c(a), 416.920(c)(a). While the ALJ is entitled to consider the number of times that a treating physician has seen a claimant in evaluating the opinion, a treating relationship is only a secondary factor to the supportability and consistency criteria. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Moreover, "[i]t is appropriate for an ALJ to rely on the opinions of [non-examining] physicians and psychologists who are also experts in social security disability evaluation." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004); *See also* 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5) (The ALJ "will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including, but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.").

Here, the records reviewed by the state agency psychological consultants provided a more longitudinal picture of Rodolfo's condition than did Dr. Castellon who saw Rodolfo for only month. "The fact that these [psychologists] reviewed the entire record strengthens the weight of their conclusions." *Flener*, 361 F.3d at 448. The ALJ explained that Dr. Castellon's opinions were not consistent with the overall treatment record. (R. 21-22). Conversely, the ALJ found the state agency psychological consultants' opinions were consistent with the longitudinal record, including the psychological consultative examination. Given Dr. Castellon's limited treatment history with Rodolfo, the ALJ reasonably concluded that the state agency consultants had a better longitudinal perspective to evaluate Rodolfo's condition. The ALJ's analysis shows that she considered the regulatory factors of supportability and consistency in weighing Dr. Castellon's opinions, and it was within her discretion to find them less persuasive than other opinions that were based on a broader view of the medical record.

Additionally, Rodolfo has not shown that the ALJ's decision to find the opinions of Drs. Rozenfeld and Robicheau persuasive was unsupported. Although Drs. Rozenfeld and Robicheau did not examine Rodolfo, they relied on the psychological consultative examination performed by Dr. Gil when reviewing and analyzing Rodolfo's medical record. (R. 57-59, 67-69, 80-81, 92-93). In reaching their conclusions, Drs. Rozenfeld and Robicheau relied on Dr. Gil's findings that Rodolfo had a sad and restricted affect and mildly depressed mood, but his eye contact was good, his behavior was relaxed and calm, he was fully oriented, polite, engaging, and related well, he denied suicidal and homicidal ideation and auditory and visual hallucinations, he repeated 6 digits forward and 4 backward, he recalled 3/3 items on delay, he performed calculations but declined serial 7s, his fund of knowledge was adequate as was his reasoning ability, his judgment was variable, and there was no evidence of psychosis or a thought process disorder. *Id*. at 58, 68, 81, 93. Based on their review of the evidence, including Dr. Gil's report, Drs. Rozenfeld and Robicheau determined that Rodolfo's mental impairment was non-severe, imposing no more than mild limitations in functioning. *Id*. That was a reasonable interpretation of the findings from the psychological consultative examination. Because the evidence supports the state agency psychological reviewers' opinions, the ALJ did not err in finding those opinions persuasive.

Overall, the nature of the treatment that Rodolfo received, the limited objective findings, including the examination findings by the consultative physician and psychiatrist and a spine x-ray, the contrary opinions by the reviewing state agency physicians and psychologists, and the limited treatment relationship between Rodolfo and Dr. Castellon were enough to support a logical bridge from the evidence to the ALJ's conclusion to discount Dr. Castellon's physical and mental RFC opinions. Thus, there is substantial evidence to support the ALJ's first and third reasons for discrediting Dr. Castellon's opinions.

The ALJ's second reason for dismissing Dr. Castellon's mental limitation opinions—that those limitations were unsupported by Dr. Castellon's evaluation—is more problematic. In particular, the ALJ rejected Dr. Castellon's opinions that Rodolfo was moderately limited in understanding and carrying out very short and simple instructions and in interacting with others.[3] (R. 21-22). The ALJ stated that Dr. Castellon's opinions were not well supported because "she relie[d] at least in part on the claimant's subjective symptoms when formulating the opinion." *Id*. at 22. Arguably, this reason—that Dr. Castellon's opinion rested "at least in part" on subjective complaints—is likely an inadequate basis for dismissing Dr. Castellon's psychological opinions. As the Seventh Circuit has explained, "[m]ental-health assessments normally are based on what the patient says, but only after the doctor assesses those complaints through the objective lens of her professional expertise." *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019); *see also Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) ("psychiatric assessments normally are based primarily on what the patient tells the psychiatrist."). "Further, the trained physician, not the ALJ, is better positioned to discern 'true' complaints from exaggerated ones." *Mischler*, 766 F. App'x at 375; *Price*, 794 F.3d at 840.

In this case, Dr. Castellon's opinion does indicate that she assessed Rodolfo's complaints through the "objective lens of her professional expertise." For example, Dr. Castellon explicitly noted that her assessment of Rodolfo's abilities to understand, remember or apply information and concentrate, persist, or maintain pace were supported by the results of Rodolfo's Mini-Mental

---

[3] The ALJ's finding that Rodolfo had no more than mild limitations in the functional areas of understanding, remembering or applying information, concentrating, persisting or maintaining pace, and adapting or managing oneself is consistent with Dr. Castellon's opinions that Rodolfo was mildly limited in his abilities to understand, remember, or apply information and concentrate, persist, or maintain pace and not limited in his ability to adapt or manage himself. (R. 18, 420).

State Examination ("MMSE").[4] (R. 420-21). Dr. Castellon explained that the MMSE showed mildly limited remembering ability, mild concentration impairment, and that Rodolfo could not recall three objects. *Id.* Thus, Dr. Castellon's report is not largely lacking in objective support. *Cf. Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) (ALJ properly rejected state agency psychologist's opinion because it "largely reflect[ed] [the claimant's] subjective reporting."). In other words, her opinion does not "merely transcribe [Rodolfo's] subjective symptoms" without adequately assessing them through the "objective lens" of her professional experience. Regarding Rodolfo's ability to interact with others, Dr. Castellon wrote: "Patient says he has lost interest and energy to interact as he used to." (R. 420). While this assessment is based on Rodolfo's subjective reports, "[by] necessity . . . patient self-reports often form the basis for psychological assessments," *Knapp v. Berryhill*, 741 F. App'x 324, 328 (7th Cir. 2018), and there is no indication that Dr. Castellon was being "too uncritical" in interpreting Rodolfo's self-reported symptoms in this regard. *Shannon M. v. Saul*, 2020 WL 264522, at *12 (N.D. Ill. Jan. 17, 2020). Thus, on this record, it is not clear that the ALJ properly discounted Dr. Castellon's moderate mental health limitations because they relied in part on subjective reporting.

However, the ALJ did not discount Dr. Castellon's moderate mental limitations solely because she relied in part on Rodolfo's subjective complaints. As discussed above, the ALJ properly viewed Dr. Castellon's opinions as inconsistent with the overall record, including the lack of treatment by a mental health specialist, only medication management by Rodolfo's primary care

---

[4]     Dr. Castellon's September 29, 2020 treatment notes indicate the MMSE was normal and Rodolfo reported no paranoia or suicidal or homicidal ideations. (R. 428 430). Overall, Rodolfo scored "28/30 (normal)" on the MMSE. *Id.* at 430. Further, Dr . Castellon's examination showed appropriate mood and affect with "no depression, anxiety, or agitation." *Id.* He was also noted to be "oriented to time, place, and person" and his judgment and insight were "intact." *Id.*

provider, the limited mental status examination findings, including by Dr. Gil, and Dr. Castellon's short previous relationship with Rodolfo. Thus, any error regarding the rejection of Dr. Castellon's mental opinion limitations as based in part on subjective reporting was harmless because the other reasons the ALJ gave for discounting the opinions were valid and supported. *Simila v. Astrue*, 573 F.3d at 516 ("[A]ny error here was harmless given the other reasons the ALJ cited for discounting Dr. Callier's opinions.").

Moreover, any mental opinion related error would be harmless for a second reason. Although not mentioned by the ALJ, Dr. Castellon expressly opined that Rodolfo's mental limitations were temporary and not expected to meet the disability durational requirement. Dr. Castellon stated that Rodolfo's mental symptoms and limitations began six months prior to the date of her opinion and were not expected to last for at least 12 months. (R. 418); *see also id.* at 428 (9/29/2020 office visit note stating "[Rodolfo] is asking for temporal psychological disability and would like these forms filled out today."). As a result, Dr. Castellon offered a psychological opinion covering just the period from March 29, 2020 to September 29, 2020. *Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015) ("Dr. Ritter's assessment, however, was—by its own terms— temporally limited and suggested that [claimant] would be unable to work for only a few weeks."). Temporary limitations which do not last 12 months or longer do not meet the durational requirement for a disability finding. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Thus, Dr. Castellon's opinions, even if credited, would not necessitate a finding of disability because they do not suggest that Rodolfo's mental symptoms were of disabling severity for at least 12 months. Moreover, viewed cumulatively, the record does not show that Rodolfo had an inability to work due to mental impairments that lasted or were expected to last for a period of one year. *Chambers*, 861 F. App'x at 101 (claimant's "medical records revealed fluctuating

psychological symptoms, but her mental impairments never deteriorated to the point of disabling within the meaning of the Social Security Act, which requires complete disability for not less than twelve months.").  There are no other treatment records or opinions showing that the mental limitations detailed in Dr. Castellon's opinions lasted or could be expected to last for at least twelve months.  The medical records before March 2020 do not support disabling mental limitations (*see supra*, n. 2), and there are no treatment records after September 2020.  In sum, Rodolfo has not met his burden of demonstrating a disabling mental impairment which lasted or was expected to last for at least twelve months. *Stepp*, 795 F.3d at 719 (claimant "is required to demonstrate that [ ]he suffers from a *long-term* disability, which must last or be expected to last at least twelve months.").

Finally, Rodolfo criticizes the ALJ for failing to discuss certain evidence which supported Dr. Castellon's proposed mental limitations.  "The regulations do not, however, require the ALJ to identify every piece of evidence that supports and runs counter to her assessment" of a physician's opinion. *Denise O.-B. v. Kijakazi*, 2023 WL 35179, at *2 (N.D. Ill. Jan. 4, 2023).  Rather, they simply require her "[to] explain how [she] considered the supportability and consistency factors for a medical source's opinions," 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), which she did here.  Rodolfo cites a mental-status exam from December 2019 where NP Holmes noted anxious and depressed mood, tearful affect, rapid and pressured speech, agitated behavior, reportedly impaired memory, and impulsive judgment, which the ALJ did not expressly mention. (R. 306).  But the ALJ cited this treatment record when discussing Rodolfo's gout, demonstrating that she was aware of it and considered it. (R. 20).  Rodolfo also emphasizes Dr. Castellon's finding on September 29, 2020 that he showed difficulty with concentration. *Id*. at 428, 430.  In this regard, Dr. Castellon opined that Rodolfo was mildly limited in his ability to concentrate, persist, or

maintain pace based on his MMSE, which is in fact consistent with the ALJ's finding that Rodolfo had no more than a mild limitation in that functional area. *Id*. at 18, 420. Next, Rodolfo incorrectly argues that the ALJ failed to mention Dr. Gil's finding that Rodolfo had a mild impairment in his immediate memory at the consultative examination. Doc. 14 at 12. However, the ALJ explicitly recounted that Rodolfo exhibited "only mild impairment in his immediate memory" at the psychological consultative exam. (R. 18).

Finally, Rodolfo cites evidence of reduced range of motion in his bilateral upper extremities that was noted during Dr. Castellon's exams. (R. 429, 435, 441). Though the ALJ was not "required to mention every piece of evidence," *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020), she explicitly addressed the September 2020 evidence of reduced upper extremity range of motion. (R. 22). The ALJ explained that she did not find Dr. Castellon's opinion that Rodolfo was limited in his ability to perform the requirements of his past work as a truck driver, including constantly lifting over 10 pounds and a full range of motion of the neck and upper extremities, persuasive because: (1) the corresponding examination showed normal strength in the bilateral upper and lower extremities; (2) there was no indication Rodolfo followed-up with the referral to physical therapy to work on range of motion or received any treatment other than pain medication; (3) there was no imaging in the record of Rodolfo's upper extremities or neck; and (4) the imaging of Rodolfo's spine showed only osteoporosis. *Id*. The ALJ's finding that Rodolfo's reduced upper extremity range of motion was not work preclusive is supported by substantial evidence.

In sum, the ALJ applied the proper legal standard in finding certain of Dr. Castellon's opinions unpersuasive. The ALJ considered whether the opinions of Dr. Castellon were supported by and consistent with the overall conservative course of treatment and limited objective findings

as she was required to do. The ALJ also provided an accurate and logical bridge between the evidence and her conclusions. Accordingly, reversal and remand is not warranted.

## **CONCLUSION**

For the reason stated above, Plaintiff's request to reverse and remand the ALJ's decision is denied [14] and the Acting Commissioner's motion for summary judgment [15] is granted. Pursuant to sentence of four of 42 U.S.C. § 405(g), the ALJ's decision is affirmed.

**SO ORDERED.**

Dated: January 18, 2023

_____
Sunil R. Harjani
United States Magistrate Judge